IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-02123-PAB

LISA R. CHAPO,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

---

**ORDER**

---

This matter comes before the Court on plaintiff Lisa R. Chapo's complaint [Docket No. 3] filed on August 31, 2010. Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

Plaintiff applied for disability benefits on January 24, 2008. R. at 71. She claimed that she was unable to work due to disability as of December 1, 2004. *Id.* Plaintiff's claim was initially denied and plaintiff requested a hearing. R. at 35. An Administrative Law Judge ("ALJ") held a hearing on November 12, 2009. R. at 21-31. On November 24, 2009, the ALJ issued a decision denying plaintiff's application. R. at 16. In his decision, the ALJ found that plaintiff had "the following severe impairments:

"mild facet disease and stenosis of the lumbar spine, affective disorder and anxiety disorder." R. at 9. The ALJ determined, however, that these impairments, alone or in combination, did not meet one of the listed impairments in the regulations. *See* R. at 10. The ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform a limited range of light work and with the following limitations: she could only occasionally bend, squat, kneel or climb and only occasionally deal with the general public as defined in 20 CFR 404.1567(b) and 416.967(b).

R. at 11.

Based upon these findings and the testimony of a vocational expert ("VE"), the ALJ found that, although plaintiff could not perform her past relevant work, she could perform jobs existing in significant numbers in the national economy. R. at 15. Therefore, the ALJ concluded that plaintiff was not disabled during the relevant time period. R. at 15-16. The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was

justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2).

Furthermore,

[a]n individual shall be determined to be under a disability only if his physical
or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

4

### C. Analysis

Plaintiff objects to the ALJ's decision on four grounds: (1) the ALJ's RFC finding is not supported by evidence in the record; (2) the ALJ did not properly weigh the conflicting opinions of plaintiff's physical impairments; (3) the ALJ improperly imposed his own opinion of plaintiff's mental impairments over the opinions of the experts; and (4) the ALJ did not properly weigh the opinions of plaintiff's mental impairments.

#### 1. ALJ's RFC Finding as to Plaintiff's Physical Impairments

As for plaintiff's physical limitations, the ALJ found plaintiff's back pain limited her to light work with the additional limitation that she "could only occasionally bend, squat, kneel or climb." See R. at 11, 15. To reach this conclusion, the ALJ summarized plaintiff's treatment for her back pain and weighed the opinions of a treating physician, Dr. David Krause, and a consultive examiner, Dr. Dipesh Amin. See R. at 13-14. Dr. Krause opined that plaintiff's chronic low back pain and disk bulge limited her in several ways, including that she could lift and carry no more than ten pounds, could sit for only thirty minutes at a time and an hour in a eight hour work day, could be on her feet for only fifteen minutes at a time and two hours in a eight hour work day, and that she could never stoop, squat, crawl, or kneel. See R. at 235-36. The ALJ gave Dr. Krause's opinion "no weight." See R. At 14. On the other hand, Dr. Amin opined that plaintiff had no weight lifting restrictions, no postural limitations, no manipulative limitations, and no relevant visual, communicative, or workplace environmental limitations. See R. at 163-64. The ALJ gave Dr. Amin's opinion "great weight." See R. at 13.

Plaintiff objects that the ALJ's RFC finding regarding her physical limitations impermissibly imposes the ALJ's opinion over that of physicians. *See Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996) (finding ALJ "clearly overstepped his bounds" by substituting his medical judgment for that of a physician). Plaintiff argues that the ALJ erred by formulating an RFC that falls between the restrictions included in Dr. Amin's and Dr. Krause's opinions and that doing so is inconsistent with the ALJ's finding that Dr. Amin's opinion merited great weight and Dr. Krause's opinion no weight.

The Court finds that the ALJ did not err in formulating the physical restrictions included in plaintiff's RFC. An ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). The ALJ's summary of the medical records and plaintiff's treatment evidences his consideration of all the relevant medical evidence. *See* R. at 12-14. The ALJ was not required to formulate an RFC that adopted a medical opinion present in the record wholesale. *See McDonald v. Astrue*, No. 10-cv-00871-CMA, 2011 WL 1398928, at *5 (D. Colo. April 13, 2011) ("There is no requirement in the social security regulations that an ALJ must come to the same conclusion as at least one medical source opinion."). The ALJ must, however, support his RFC finding by linking it to credible evidence in the record. *See Moon v. Barnhart*, 159 F. App'x 20, 22-23 (10th Cir. 2005) (remanding where ALJ rejected two medical opinions and "made an RFC finding in between them" without specifying what evidence he relied on to do so). The ALJ's finding that plaintiff was restricted to only simple, unskilled work due to her "intermittent back pain" and only occasional bending, squatting, kneeling, or climbing was linked to credible evidence

reviewed by the ALJ.  In his decision, the ALJ noted, on the one hand, plaintiff's spotty record of reporting her back pain, her normal physical exams, and, on the other, an MRI and X-ray, which indicated that plaintiff had a disk bulge and "some nerve encroachment."  *See* R. at 12-13.  The ALJ's finding that plaintiff's "intermittent back pain" justified a more restrictive RFC than the RFC formulated by Dr. Amin was supported by substantial evidence.  *See* R. at 15; 11.  Moreover, it was within the ALJ's province to make such a finding.  *See Ross v. Shalala*, 1995 WL 76861, at *2 (7th Cir. Feb. 24, 1995) (affirming ALJ's finding RFC that "split the difference" between two conflicting medical opinions because "[t]he final responsibility for deciding RFC rests with the ALJ").

### *2. Weight Given to Opinions as to Plaintiff's Physical Impairments*

Plaintiff objects to the ALJ's finding that Dr. Krause's opinion was entitled to no weight.  The ALJ rejected Dr. Krause's opinion because he had only begun treating plaintiff in the month immediately preceding the hearing and because none of his treating records were submitted in evidence.  *See* R. at 14.  The ALJ also noted that Dr. Krause's opinion was itself inconsistent.  *See id.* ("While he opined that the claimant's condition limited her in how much she could lift and carry, he also indicated that the claimant's condition did not restrict her ability to use her upper extremities.").  It is not clear that Dr. Krause qualifies as a "treating source" based on this brief period of treatment but, assuming that he does, the ALJ was required to give his opinion controlling weight only if his opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other

substantial evidence." *See* 20 C.F.R. § 404.1527(d)(2).  Where an ALJ does not assign controlling weight to a treating source's opinion, he must give "specific, legitimate reasons for his decision," *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001), and determine the opinion's appropriate weight looking to the factors which apply to all medical opinions. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).  Here, the ALJ properly determined that Dr. Krause's opinion was not well supported, as no treatment records from Dr. Krause were provided in the record.  Although plaintiff notes that Dr. Krause ordered an MRI, the results of which were in the record, the ALJ discussed these results, and neither the records of the MRI nor Dr. Krause's opinion regarding plaintiff's limitations make any conclusions about how the MRI's results support the serious restrictions Dr. Krause assigned.  *See* R. at 170, 235-37.  Moreover, the ALJ's finding that Dr. Krause's opinion was entitled to no weight was legitimately based on the shortness of his treatment relationship with plaintiff and the lack of supporting evidence in the form of treatment records for his opinion.  *See Watkins*, 350 F.3d at 1301 (listing factors).  Therefore, the Court concludes that the ALJ did not err in rejecting Dr. Krause's opinion.

In the same vein, plaintiff also argues that the ALJ erred in giving Dr. Amin's opinion greater weight than Dr. Krause's.  Although a treating physician's opinion is generally entitled to greater weight than an examining physician's opinion, an ALJ may accord an examining physician's opinion more weight where he provides "legitimate reasons" for doing so.  *See Jeffries v. Social Security Admin.*, 358 F. App'x 25, 32 (10th Cir. 2009).  As explained above, the ALJ gave legitimate reasons for rejecting Dr.

Krause's opinion. He also had legitimate reasons for according Dr. Amin's opinion great weight, as he found the opinion to be based on "a thorough examination" and "supported by and consistent with the medical evidence of record." See R. at 13. Therefore, the Court concludes that the ALJ did not err in weighing the medical opinions related to plaintiff's physical impairments.

### 3. ALJ RFC Finding as to Plaintiff's Mental Impairments

Plaintiff argues that the ALJ erred by rejecting both the opinions on her mental impairments present in the record and concluding that plaintiff's mental impairments only imposed a moderate the limitation on her ability to deal with the general public. As explained above, it is the ALJ's task to formulate a claimant's RFC based on all the evidence. An ALJ may reject the medical opinions in the record and reach his own conclusion as to a claimant's RFC, so long as that conclusion is based on substantial evidence. See McDonald, 2011 WL 1398928, at *5-*6; Moon, 2005 WL 3446576, at *2-*3. The ALJ's finding that plaintiff's mental impairments only limited her social functioning is supported by substantial evidence. In his assessment of whether plaintiff's impairments met or equaled a Listing at step three, the ALJ reviewed plaintiff's testimony regarding the effect of her mental impairments and found that, based on this testimony, plaintiff suffered "moderate difficulties" in social functioning, but only "mild" difficulties in "activities of daily living," and in "concentration, persistence or pace." See R. at 10-11. These findings support the inclusion of only a limitation as to social functioning in plaintiff's RFC, and the Court concludes the RFC is supported by substantial evidence.

### *4. Weight Given to Opinions as to Plaintiff's Mental Impairments*

Plaintiff objects to the ALJ's assessment of two opinions as to her mental impairments. First, the ALJ rejected the opinion of Licensed Clinical Social Worker ("LCSW") Tom Clemens, finding that the "extreme limitations" Mr. Clemens assigned "would require hospitalization of a patient and there are no hospitalizations for the claimant's mental functioning in the medical evidence of record." R. at 14. Moreover, the ALJ noted that LCSWs are not acceptable medical sources; thus, the ALJ was not required to give his opinion the same weight as he might a medical opinion from a psychologist. *See* R. at 14; 20 C.F.R. § 404.1513(a)(1) (defining "acceptable medical sources"); 20 C.F.R. § 404.1527(a)(2) (defining medical opinions as statements from acceptable medical sources). These were legitimate reasons for rejecting Mr. Clemens' opinion and the Court finds the ALJ did not err in assigning it no weight.

Next, the ALJ considered the opinions of psychologist Jose Vega, Ph.D., to which he gave "little weight." *See* R. at 15. Dr. Vega saw plaintiff on two occasions. In September 2009, he completed a one-page "Med-9" form based on a state disability examination and, on October 20, 2009, he conducted a "Mental Residual Functional Capacity Evaluation" at the request of plaintiff's attorney. In conducting the latter evaluation, Dr. Vega interviewed plaintiff about her upbringing, her marriages, her substance abuse, and her mental health history. He also performed a brief mental status examination. He did not obtain mental health records of plaintiff. Based on this evaluation, Dr. Vega opined that plaintiff "has difficulty in tolerating being around people" and she was "not psychologically stable to where she would be able to function in a competitive job market." R. at 225. Dr. Vega also concluded that plaintiff had

several extreme limitations in her mental functioning. *See* R. at 226-27. The ALJ accorded these opinions "little weight" because Dr. Vega had a professional relationship with plaintiff for only two months and knew claimant only because he had evaluated her for state-based disability programs. *See* R. at 14-15. Nonetheless, the ALJ found plaintiff to have a limitation on dealing with the general public, thus according Dr. Vega's opinion on this issue at least some weight. Dr. Vega was not entitled to the deference of a treating source, *see* R. at 220; 20 C.F.R. § 416.902 ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support for your claim for disability."), and the ALJ properly accorded Dr. Vega's opinion little weight based on the short duration of his relationship with the plaintiff, s*ee Watkins*, 350 F.3d at 1301, which resulted in a Med-9 form and an evaluation based on plaintiff self-reports and a simple mental status examination. Accordingly, the Court finds that the ALJ did not err in his assessment of the medical opinions as to plaintiff's mental limitations.

## III. CONCLUSION

For the reasons stated above, the Court concludes that the Commissioner's finding that the plaintiff is not disabled under the Act is based upon substantial evidence and represents a correct application of the law. As a result, the Commissioner's decision is AFFIRMED.

DATED August 2, 2011.

                            BY THE COURT:

                            s/Philip A. Brimmer
                            PHILIP A. BRIMMER
                            United States District Judge